(C.D. 2456)

ILLINOIS BEEF AND PROVISION CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 14, 1964)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Andrew P. Vance* and *Herbert L. Warren*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: There is no question that the instant merchandise was not dutiable as liquidated. Defendant concedes that assessment of duties was the result of a clerical error, or inadvertence, on the part of the collector. The only question is whether there is before us a timely protest which permits us to direct refund of the duties unlawfully exacted.

Summarized from the official papers, which are in evidence, from stipulations and testimony, the facts are that plaintiff imported from Australia on April 22, 1959, at the port of San Francisco, merchandise described as frozen boneless veal, which was entered for consumption under paragraph 701, as veal, frozen, dutiable under the modified paragraph at 3 cents per pound.

Prior to arrival of the SS *Saxon Star*, in which the veal was shipped from Australia, plaintiff filed (Form 3461) an application for special

permit for delivery of perishable and other articles, immediate delivery of which is necessary. In this application, plaintiff, over the signature of Harry Gurrentz, president, declared as reasons for immediate delivery: "Material is highly perishable. Must be transferred to ice house immediately." Applicant also stated that "consumption entry will be made."

The collector initialed his permission for release of the merchandise under bond, stamping the application also, as required, with the notation: "Hold until released by USDA animal inspection Quarantine Branch." The initials USDA are conceded to refer to the United States Department of Agriculture. This application-permit is in the file of official papers.

What transpired as to the merchandise after arrival of the SS *Saxon Star* at San Francisco is shown in the record, as follows:

MR. VANCE: * * * We are prepared to stipulate that, one, that the merchandise subject to protest was invoiced as 585 cartons frozen boneless veal, which was delivered to ice house before making entry.

JUDGE WILSON: Is that correct?

MR. TUTTLE: Not prior to making entry. A special permit was on file, which is the beginning.of the customs entry.

JUDGE WILSON: Evidently he doesn't want to agree to that.

MR. VANCE: That said merchandise was examined April 29, 1959, and appraised by the Appraiser on April 29, 1959 as frozen boneless veal, and advisorily classified as entered as veal, at three cents per pound, under Paragraph 701 of the Tariff Act of 1930, as modified.

MR. TUTTLE: That we agree to.

MR. VANCE: That on May 6, 1959 the customs house broker for the plaintiff was notified that said merchandise was determined by the Bureau of Animal Industries to be not clean due to hair and ingesta, thus unfit for human consumption, the product refused customs entry, and told that the product should either be destroyed for food purposes within 30 days or removed from this country.

JUDGE WILSON: Is that correct?

MR. TUTTLE: Yes, sir.

MR. VANCE: That on June 5, 1959, said merchandise was exported to London, England, under customs supervision, in conformity with Section 8.49(b) and 18.25 of the Customs Regulations, and San Francisco Export Certificate 4540 of May 28, 1959.

JUDGE WILSON: Is that right?

MR. TUTTLE: Agreed.

MR. VANCE: That said merchandise was liquidated on June 24, 1959, being assessed with duty under Paragraph 701 of the Tariff Act at three cents per pound, and that all papers relating to the prior proceedings for exportation were apparently contained within the file at the time of liquidation.

MR. TUTTLE: Now, I would rather have that say were contained in the file at the time of liquidation.

Mr. Vance: Well, for the purposes of our case it doesn't matter whether it was apparently, or contained, so I'll strike "apparently".

Judge Wilson: Is that agreeable?

Mr. Tuttle: Agreed.

Mr. Vance: That on March 21, 1961, the customs house broker, Franklin B. Howland, who handled the shipment, requested the Collector of Customs, by letter, to reliquidate the said entry, and to refund the duties in the amount of $1,182.90, on the ground that the merchandise was exported within 30 days in accordance with the Bureau of Animal Industries instructions.

Mr. Tuttle: Agreed.

Mr. Vance: On April 12, 1961, the Collector of Customs by letter advised the customs house broker that reliquidation of the entry was denied as, "there was no timely protest against the liquidation under the provisions of Section 514, Tariff Act of 1930, and the error was not called to the attention of the Customs Service within one year after the date of liquidation as required by the provisions of Section 520(c)(1), Tariff Act, as amended."

Mr. Tuttle: Agreed.

Judge Wilson: All right.
Now, what's between you, Mr. Tuttle?

Mr. Tuttle: Well, I will agree to those facts. [R. 4 to 7.]

Submission was set aside, on plaintiff's motion, and the protest was amended to present five alternative claims, as follows:

1) We claim the liquidation was void and should be set aside because the appraisement was void. The merchandise was appraised as edible meat whereas it should have been appraised under Section 499 and 500(c) (4) and (5) and 501 as "waste" or "meat" unfit for human consumption, and advisorily classified at 5% under Paragraph 1558.

2) In the alternative, we claim that under Section 558 the Collector is required to refund the duties without regard to the date of liquidation where the requirements of this section are met, or within 60 days after the matter is called to the attention of the collector.

3) In the alternative we claim that the refusal of the collector to reliquidate the entry by his letter of April 12 constitutes clerical error under Section 520(c) (1) and the letter decision of the Collector of April 12, 1961 constitutes a refusal to reliquidate under Section 520(c)(1) as to which a timely protest can be filed within 60 days from the date of said refusal, wherein the clerical error was manifest from the papers because exportation was accomplished under Sections 8.49 (b) 8.25 and 8.26 of the customs regulations, as amended.

4) In the alternative, we claim that entry was void and constitutes a non-importation because the merchandise was never accepted by the Bureau of Animal Industry as meat fit for human consumption.

5) In the alternative, we claim that under Section 506 the Collector is required to treat the entry as a nonimportation and refund the duty paid.

We take up these claims *seriatim.*

The first claim is that the liquidation was void because the appraisement was void, and that the reason the appraisement was void is

because the merchandise was appraised as edible meat, whereas it should have been appraised as either waste or meat unfit for human consumption, and also because it was advisorily classified by the appraiser incorrectly.

Erroneous advisory classification does not result in a void appraisement. Nor does incorrect value have such effect. Error in classification is a wrong to be righted by timely protest after liquidation. Error in value is a defect of appraisement to be corrected by timely appeal to reappraisement.

We do not find that the proofs before us establish a void appraisement of this merchandise. (Parenthetically, it is noted that appraisement was on April 29, 1959, at entered value; the merchandise was not exported, under customs supervision, until June 5, 1959.) Therefore, the appraisement was not void and, hence, the liquidation was not void *for that reason* as the protest claims.

As to the protest claim under section 558, Tariff Act of 1930, as amended, plaintiff appears to rely on the exception provided in subparagraph (2):

(a)  No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

*       *       *       *       *       *       *

(2)  When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe; * * *.

Section 558 seems to us to have no relevance to the situation here, as it is conceded that the veal was not released from the custody of the Government, but was exported while in such custody.

The third amended protest claim has two prongs. One is that the refusal of the collector, on April 12, 1961, to reliquidate the entry constitutes a clerical error, which started then the period provided in section 520 for protesting such refusal. That there was clerical error, or inadvertence, on June 24, 1959, when the entry was liquidated, is conceded. What happened on April 12, 1961, is hardly a clerical error, or inadvertence, as the collector's letter plainly shows. That letter is as follows:

April 12, 1961

Franklin B. Howland
596 Clay Street
San Francisco, California

Dear Sir:

We refer to your petition of March 21, 1961, asking that this office reliquidate San Francisco entry No. 30720 of April 22, 1959, and refund duty deposited thereon. This entry, covering 585 cartons of frozen boneless veal was entered

by you in the name of the Illinois Beef and Provision Company and liquidated on June 24, 1959, "as entered." You point out that this merchandise was denied admission by the Meat Inspection Division of the United States Department of Agriculture and subsequently exported under customs supervision. Inasmuch as M.D. 410 and CF 7512 showing exportation were in the entry jacket at time of liquidation you state this to be clearly a case of clerical error.

This office, being unable to offer relief under section 520(c)(1) Tariff Act of 1930, as modified, due to the lapse of time, referred the matter to the Commissioner of Customs for a decision and that decision is now at hand. It reads in part as follows:

"There is no doubt that the liquidation was the result of a clerical error or an inadvertence on the part of the liquidator. However, there was no timely protest against the liquidation under the provisions of section 514, Tariff Act of 1930, and the error was not called to the attention of the Customs Service within one year after the date of liquidation as required by the provisions of section 520(c)(1), Tariff Act, as amended. Therefor, the Bureau is precluded, as a matter of law, from authorizing any reliquidation of the entry and the request of the broker is denied."

> Very truly yours,
> Robert Higgins
> Collector of Customs

Whether or not the Commissioner is right in a particular instance, in his understanding of the law, it is far-fetched to charge the collector with clerical error in following the Commissioner's directive.

The other aspect of the third protest claim is that the collector's letter of April 12, 1961, constitutes a refusal to reliquidate under section 520(c)(1), as to which timely protest can be filed within 60 days from the date of such refusal. Plaintiff cites several cases, which hold that such protest is indeed timely in situations where the request to reliquidate was likewise timely. The lack of timeliness of plaintiff's *request* to the collector to reliquidate is the cause of its difficulty, and as to this aspect of the problem plaintiff's brief is silent. Defendant concedes that the protest was filed within 60 days after the collector's refusal to reliquidate, and has not moved to dismiss the protest as untimely. What defendant asserts is that the request to reliquidate was properly denied because, and only because, that request was not timely filed.

The fourth and fifth protest claims together present the claim that this entry became void, being for a "nonimportation," so that under section 506 the collector is required to refund the duties paid.

These claims both rest on the theory that here there was a "nonimportation." The same theory was advanced in *Wm. J. Jones and Co.* v. *United States*, 38 CCPA 158, C.A.D. 453. There, the protest against liquidation seems to have been timely filed, as it was not in the instant case. The issue raised, however, was that the condition of the entered merchandise was such as to constitute a nonimportation.

Our appeals court, affirming the judgment of this division, found that plaintiff had not shown arrival "in such a wholly commercially worthless condition as to constitute a nonimportation." (*Jones, supra*, at p. 159.) Here, it is evident that there were dutiable bases, other than as veal fit for human consumption, on which the merchandise might have been imported.

Section 506 is entitled "Allowance for abandonment and damage" and provides for allowance "in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury" in specified cases. Neither in the statute nor in the applicable regulations do we find any provision for correction of "the estimation and liquidation of duties" subsequent to the statutory periods prescribed in sections 514 and 520.

Regrettable as it is that plaintiff has been unlawfully assessed with duties, the reason it can not now recover is because it slept on its rights. From the outset, plaintiff itself participated in the proceedings at San Francisco relative to this shipment of veal. It also was represented by an experienced customs broker. We have no authority, under congressional enactment, to cause to be done now what they did not timely do.

The protest against the decision of the collector refusing to reliquidate, was timely filed, but the issues raised by the protest lack merit on the facts and the law.

The protest is overruled. Judgment will be entered accordingly.